UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARY BETH MORGAN,

       Plaintiff,

vs.                                        CASE NO. 3:12-cv-32-J-99MMH-TEM

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

       Defendant.
_____

### REPORT AND RECOMMENDATION[1]

This case has been referred to the undersigned for issuance of a Report and Recommendation on Defendant's Motion to Stay (Doc. #10), and Plaintiff's Motion Regarding Choice of Law (Doc. #14). For the reasons described herein, the undersigned respectfully **RECOMMENDS** Plaintiff's Motion Regarding Choice of Law (Doc. #14) be **DENIED** to the extent described below, and Defendant's Motion to Stay (Doc. #10) be **GRANTED**.

### I. Background

This matter arises from Defendant Government Employees Insurance Company's ("GEICO") alleged negligent and bad faith failure to settle a Florida lawsuit, Annie Milton v. Mary Beth Morgan ("Milton lawsuit"), Case No. 2009-CA-013243m Div. CV-H, Fourth Judicial Circuit, Duval County, Florida.

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); and, Local Rule 6.02(a), United States District Court for the Middle District of Florida.

Mary Beth Morgan is a Georgia resident who lives with her parents in Hinesville, Ga. (Doc. #5 at 1). GEICO issued a "Georgia Family Automobile Insurance Policy," policy no. 0294-61-15-04, with bodily injury liability limits of $100,000 per person and $300,000 per occurrence ("Policy") (Doc. #5 at 2). The Policy was in effect at the time of the accident that led to the Milton lawsuit. *Id.*

On August 9, 2008, Morgan was driving in Florida and was involved in an accident with a vehicle driven by Annie Milton. *Id.* Milton alleged she was injured in the accident and retained counsel in Florida to recover for her injuries. *Id.* After pre-suit negotiations did not resolve the claims, Milton filed a lawsuit against Morgan in Jacksonville, Florida. *Id.* GEICO provided a defense to Morgan using lawyers who are employees of GEICO. *Id.* During the Milton lawsuit, Milton served upon Morgan a document titled Proposal for Settlement. *Id.* Under the terms of the proposal, GEICO had an opportunity to pay $50,000 to Milton. *Id.* At the time of the proposal, Milton had incurred $14,262.82 in medical expenses (Doc. #5 at 2-3). GEICO rejected the terms of the proposal (Doc. #5 at 3). Morgan admitted liability in the Milton lawsuit. *Id.* The lawsuit went to trial and on October 20, 2010, the jury delivered a verdict against Morgan in the amount of $480,062.82, representing: $14,262.82 in past medical expenses; $176,000 in future medical expenses; $48,300 for past pain and suffering; and $241,500 for future pain and suffering. *Id.* On October 21, 2010, the Florida court entered final judgment against Morgan in the amount of $480,062, subject to six percent interest. *Id.* The court later awarded Milton attorneys' fees and costs of $127,078.09. *Id.* The total liability to Morgan arising out of the Milton lawsuit is $607,140.91, subject to six percent interest. *Id.* On

behalf of Morgan, GEICO appealed the judgment against her to the Florida Court of Appeals. *Id.* The appeal is currently pending. *Id.*

On August 15, 2011, Morgan filed a complaint against GEICO in the Superior Court of DeKalb County, Georgia, alleging negligent and bad faith failure to settle the Milton lawsuit (Doc. #1). GEICO removed the action on the basis of diversity of the parties to the United States District Court for the Middle District of Georgia on September 9, 2011. *Id.* On November 4, 2011, GEICO filed a motion to transfer venue, requesting the case be transferred to the Jacksonville Division of the United States District Court for the Middle District of Florida (Doc. #9). The Honorable Thomas Thrash of the Middle District of Georgia granted the motion on January 9, 2012 (Doc. #36).

Prior to the change of venue, the parties filed several motions, which are currently pending before the Court. On November 4, 2011, GEICO filed a motion to stay, requesting the action be stayed until the Milton lawsuit is resolved through the Florida appeals process (Doc. #10). Morgan filed a response in opposition on November 21, 2011 (Doc. #21). GEICO filed a reply on November 28, 2011 (Doc. #25).[2]

On November 14, 2011, Morgan filed a motion regarding choice of law, requesting the Court rule that Georgia law applies to this case (Docs. #14 & #16). GEICO filed a response in opposition on November 21, 2011 (Doc. #22). Morgan filed a reply on November 28, 2011 (Doc. #26).

On July 9, 2012, the Honorable Marcia Morales Howard referred the motion to stay

---

[2] The Local Rules for the Northern District of Georgia permit the movant to file a reply brief without leave of the Court. *See* Local Rule 7.1(C), United States District Court for the Northern District of Georgia.

Case 3:12-cv-00032-MMH-PDB   Document 64   Filed 08/22/12   Page 4 of 15 PageID 689

(Doc. #10) and the motion regarding choice of law (Doc. #14) to the undersigned for issuance of a report and recommendation (Doc. #56).[3]  A status conference was held before the undersigned on July 10, 2012.  On July 24, 2012, the parties filed supplemental briefs (Docs. #60, Plaintiff Morgan's brief, and #61, Defendant GEICO's brief).  On July 26, 2012, Morgan filed a response to GEICO's supplemental brief (Doc. #62).  GEICO filed a response in opposition on August 3, 2012 (Doc. #63).

In summary, the parties disagree as to whether Florida or Georgia law governs this action, and whether Florida or Georgia law supports Defendant's request for this matter to be stayed pending appeal of the Milton lawsuit.  Accordingly, the undersigned must determine whether Georgia or Florida law applies to this action, and whether the applicable state's law requires or encourages this action be stayed pending resolution of the underlying Milton lawsuit on appeal.

## II. Choice of Law

A federal court sitting in diversity applies the law, including the choice of law rules, of the state in which it sits.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  However, cases that are transferred from one federal district to another present an exception to this general rule.  When venue

---

[3]  The parties have also filed several discovery motions that are currently pending before the undersigned, including: Plaintiff's motion to compel production of GEICO's claims manual (Doc. #15), filed November 14, 2011; Defendant's motion for protective order (Docs. #17 & #19), filed November 16, 2011; and Plaintiff's motion to strike untimely filed affidavits (Doc. #32), filed December 19, 2011.  These three motions are not the subject of this report and recommendation.  However, the Court's ruling on the motion to stay will obviously impact the progress of discovery in this case.  As this report recommends the motion to stay be granted, the undersigned will defer deciding the pending discovery disputes until the Court issues its ruling as to the status of this matter.

is transferred, a federal court sitting in diversity must determine whether to apply the law of the transferor state, or the law of the transferee state in which it sits. When venue is transferred under § 1406(a),[4] the transferee court must apply the choice of law rules of the state in which it sits. *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1110 (5th Cir. 1981)[5]; *Manley v. Engram,* 755 F.2d 1463, 1467 (11th Cir. 1985). When venue is transferred pursuant to § 1404(a),[6] the transferee court generally must apply the same state law that the transferor court would have applied if the action had remained there. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). However, following a section 1404(a) transfer from a district which lacked personal jurisdiction over the defendant, the transferee court must apply the choice of law rules of the state in which it sits. *Ellis*, 646 F.2d at 1110; *Manley*, 755 F.2d at 1467 n.10.

The Northern District of Georgia did not explicitly order this case transferred to the Middle District of Florida pursuant to either § 1406(a) or § 1404(a), but it appears Judge Thrash granted the motion to transfer under § 1404(a). In granting the motion, Judge Thrash noted the automobile accident occurred in Florida, the lawsuit was filed in Florida, and the adjusters were in Florida. He concluded, "This case has no connection whatsoever

---

[4] "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

[5] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

[6] "For the convenience of parties and witnesses, in the interest of justice, a court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

with DeKalb County or the Northern District of Georgia."[7] Defendant argues this language implies that Judge Thrash found venue to be improper, and thus the transfer was based on § 1406(a). However, Defendant moved for the transfer pursuant to § 1404(a) "for the convenience of the parties and witnesses, in the interest of justice." Defendant never argued venue was improper due to lack of personal jurisdiction.[8] Given that the motion being granted requested transfer under § 1404(a) and there was no argument that Georgia lacked personal jurisdiction over Defendant, it appears Judge Thrash intended to transfer the action for convenience's sake. *See Gerena v. Korb*, 617 F.3d 197 (2nd Cir. 2010) (finding venue transfer made pursuant to § 1404(a) where transferring district court did not specify which section applied but the motion being granted requested transfer pursuant to § 1404(a); remanding for determination of whether state of transferring court had personal jurisdiction over defendant where defendant argued it did not have such jurisdiction); *Donnelly v. McConnell*, No. 6:12-cv-670-Orl-22KRS, 2012 WL 2402803, at *3 (M.D. Fla. June 26, 2012)[9] (construing transfer of venue as pursuant to § 1406(a) where transferring district court did not explicitly state which section applied but "described the original venue

---

[7] Plaintiff lives in Hinesville, Ga., which is located in the Savannah division of the Southern District of Georgia. At the July 10, 2012 status conference before the undersigned, counsel for Plaintiff stated the case was filed in DeKalb County because that is where Plaintiff's counsel is located.

[8] Indeed, in the Joint Preliminary Report and Discovery Plan (Doc. #5) filed in the Northern District of Georgia, the parties indicated there was no question regarding the court's jurisdiction and Defendant planned to file a motion to transfer venue to the Middle District of Florida "on the grounds that the pertinent events, witnesses and documents are located in that district."

[9] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

as improper rather than merely less convenient"). Because Defendant requested the transfer pursuant to § 1404(a) and has not alleged lack of personal jurisdiction, the general rule of *Van Dusen* applies. Accordingly, this Court must apply Georgia's choice of law rule in determining whether Florida tort law or Georgia tort law governs this action.[10]

## A. Applying Georgia Choice of Law Principles Leads to the Application of Florida Law

In Georgia, a claim for negligent or bad faith refusal to settle within policy limits sounds in tort, not contract. *Metro. Prop.& Cas. Ins. Co. v. Crump*, 513 S.E.2d 33, 35 (Ga. App. 1999). In accordance with Georgia's choice of law rule of *lex loci delicti*, "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mudslingers, Inc.*, 621 S.E.2d 413, 414 (2005).

Although all of the events relevant to this action occurred in Florida, Plaintiff argues Georgia law should apply, because Georgia is where she is suffering injury, and "[t]he last event necessary to make an actor liable for a tort is injury." (Doc. #14 at 4). Plaintiff argues all of the injuries she has suffered and could potentially suffer as a result of Defendant's failure to settle will occur in Georgia. Plaintiff argues any collection efforts by the judgment creditor in the underlying lawsuit will occur in Georgia. The existence of the judgment will damage her creditworthiness in Georgia where she lives. Her assets are located in Georgia, and she may suffer injury if they are seized. Plaintiff cites to *IBM Corporation v. Kemp*, 536 S.E.2d 303 (Ga. App. 2000), in support of her argument that Georgia law should govern this action because that is where her injuries will be "sustained"

---

[10] As will be discussed in greater detail *infra* Part II.B., whether Florida choice of law rules or Georgia choice of law rules apply, the result is the same: Florida law governs this action.

and "suffered."

In *Kemp*, IBM offered its employees certain early leave or retirement benefits in a program known as ITO-II. *Id.* at 305. Employees who took part in ITO-II continued to be eligible for a pre-existing program known as REAP, which offered reimbursement for employees and their spouses for a course of study or training taken within three years after retirement. *Id.* After IBM suspended REAP benefits, plaintiffs filed a complaint asserting causes of action for fraud and breach of contract. *Id.* Plaintiffs alleged they were defrauded when IBM cancelled REAP benefits after they took early leave or early retirement. *Id.* The issue before the Georgia Court of Appeal concerned class certification. *Id.* Proposed class members were residents of various states. *Id.* at 306. The trial court granted class certification, based in part on his finding that the commonality requirement was met because New York law would uniformly apply to the claims of all potential class members. *Id.* The Georgia Court of Appeal reversed. The court noted,

> Under the rule of lex loci delictis, tort cases are generally governed by the substantive law of the place where the tort or wrong occurred. In torts of a transitory nature, the place of the wrong is the place where the last event occurred necessary to make an actor liable for the alleged tort.

*Id.* (citing *Wardell v. Richmond Screw Anchor Co.*, 210 S.E.2d 854 (Ga. App. 1974); *Risdon Enter. v. Colemill Enter.*, 324 S.E.2d 738 (Ga. App. 1984)). The trial court determined New York law applied because the last event necessary to establish liability for fraud was IBM's decision to suspend REAP benefits, which occurred in New York. *Id.* The appellate court disagreed and found the decision to suspend REAP benefits was not the last act necessary to establish liability for fraud. *Id.* The appellate court reasoned,

> The elements of fraud are: a false representation by a defendant, scienter,

8

>  intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. Only fraud which results in damage is actionable. Thus, the 'last event' necessary to make an actor liable for fraud is the injury, and consequently, for purposes of lex loci delictis, the place of the wrong is where that injury is sustained.

*Id.* (internal quotations and citations omitted). The appellate court found the potential class members did not suffer injury at the moment IBM decided to suspend benefits, because they were not entitled to reimbursement under REAP until tuition had been paid. *Id.* at 307. "Thus, injury occurred only when a former employee or spouse felt the effect of IBM's decision, that is when IBM failed to reimburse tuition to those who would have qualified for reimbursement." *Id.*

Using the framework established in *Kemp*, the undersigned finds Florida law applies to this action, because the injury sustained by Plaintiff occurred in Florida. In *McCall v. Allstate Insurance Company,* the Supreme Court of Georgia described the tort of negligent failure to settle as follows:

> An automobile liability insurance company may be liable for damages to its insured for failing to adjust or compromise the claim of a person injured by the insured and covered by its liability policy, where the insurer is guilty of negligence or of fraud or bad faith in failing to adjust or compromise the claim to the injury of the insured. Hence, where a person injured by the insured offers to settle for a sum within the policy limits, and the insurer refuses the offer of settlement, the insurer may be liable to the insured to pay the verdict rendered against the insured even though the verdict exceeds the policy limit of liability. The reason for this rule is that the insurer may not gamble with the funds of its insured by refusing to settle within the policy limits.

310 S.E.2d 513, 514-15 (Ga. 1984) (internal citations and quotations omitted); *see also Cotton States Mut. Ins. Co. v. Brightman*, 580 S.E.2d 519, 521 (Ga. 2003) ("An insurance company may be liable for the excess judgment entered against its insured based on the insurer's bad faith or negligent refusal to settle a personal claim within the policy limits.

Judged by the standard of the ordinarily prudent insurer, the insurer is negligent in failing to settle if the ordinarily prudent insurer would consider choosing to try the case created an unreasonable risk." (internal footnotes omitted)).

In a failure to settle case such as the one at bar, the last event necessary to make an actor liable for the tort is the entrance of a judgment against the insured in excess of the policy limits. This is the moment of "injury" for purposes of this tort in a case such as this one. *See Delancy v. St. Paul Fire & Marine Ins. Co.*, 947 F.2d 1536, 1552 (11th Cir. 1991) ("Georgia law does not clearly require an insured to show that an excess judgment has been entered to recover for an insurer's negligent or bad faith failure to settle; it does not, likewise, eliminate the possibility that such a judgment is required for recovery. We assume that the insured must show that he has suffered actual injury proximately caused by the insurer's failure to settle the suit within a reasonable time after settlement was possible. The most telling evidence of foreseeable damage, of course, will almost always be the entry of a judgment in excess of the policy limits." (internal footnotes omitted)); *Dickerson v. Am. Nat'l Prop. & Cas. Co.,* No. 3:07-cv-111(CDL), 2009 WL 1035131, at *6 (M.D. Ga. Apr. 16, 2009) ("To prevail on a negligent or bad faith failure to settle claim, an insured must prove that 'the insurer had a duty to settle the case, breached that duty, and [the] breach proximately caused damages to the insured beyond the damages, if any, contemplated by the insurance contract.'" (quoting *Delancy*, 947 F.2d at 1546-47)); *Trinity Outdoor, LLC v. Cent. Mut. Ins. Co.*, 679 S.E.2d 10 (Ga. 2009) (holding action for negligent or bad faith failure to settle could not be maintained in the absence of a jury verdict in excess of the policy limits where insurance policy in question stated: the insurer would only

pay those sums that the insured was legally obligated to pay; the insured could not make voluntary payment without insurer's prior consent; and the insurer could only be sued on agreed upon settlement or a final judgment entered after trial).

In the instant case, Plaintiff's injury occurred in Florida at the time the Florida court entered judgment against Plaintiff in excess of her policy limits.  This is the moment she incurred damages beyond the damages contemplated by her insurance contract.  Although Plaintiff may continue to feel the effects or consequences of her injury in her home state in various ways (i.e. through damage to her creditworthiness or in defense against collection efforts) this does not change the determination that the "moment of impact" causing her injury for purposes of the tort of negligent failure to settle occurred in Florida.  The "injuries" cited by Plaintiff in her brief (i.e. the damage to her creditworthiness, the collection efforts by the judgment creditor, the exposure of her assets) are merely consequences that flow from her initial injury (i.e. the judgment in excess of her policy limits).[11]  Accordingly, under the Georgia choice of law rule *lex loci delicti*, Florida law

---

[11] In addition to those discussed above, Plaintiffs cites several other cases in support of her argument that Georgia is the place where she "suffered" and "sustained" injury. These cases are distinguishable on the facts and, moreover, do not support Plaintiff's strained interpretation of the words "suffered" and "sustained." *See, e.g., Bishop's Prop. & Invs., LLC v. Protective Life Ins. Co.*, 597 F.Supp.2d 1354 (M.D. Ga. 2009) (action against insurer for failure to promptly refund unearned premiums following early payoff of insured's loan; parties agreed that plaintiff's place of residence was the location of his injury; parties disputed whether plaintiff resided in Georgia or Alabama); *Mullins v. M.G.D. Graphics Sys. Grp.*, 867 F.Supp. 1578 (N.D. Ga. 1994) (plaintiff injured while operating a paper-cutter in Georgia when machine descended on plaintiff's hand and cut off several of his fingers; plaintiff argued New York law should apply because that was place of "the actual tortious activity which preceded the injury," including the decision to modify the machine with faulty safety devices; court held Georgia law applied because that is where the injury occurred); *Risdon*, 324 S.E.2d (holding substantive law of South Carolina controlled in negligence
(continued...)

governs this cause of action.

**B. Applying Florida Choice of Law Principles Also Leads to the Application of Florida Law**

Even if the Court were to find that Florida choice of law rules should be applied, the outcome would be the same, because Florida's choice of law rules would also lead to the application of Florida law. In *GEICO v. Grounds*, the Florida Supreme Court explained that when an insured brings an action against his insurer for failure to settle a third party's claim, the action sounds in contract. 332 So.2d 13, 14 (Fla. 1976). Because this type of action is based on the defendant's "performance under the contract (or lack thereof)," the law of the place of performance governs under traditional conflict of law principles. *Id.* at 14-15.

In the instant case, the place of performance was Florida. Florida is where the underlying lawsuit against Plaintiff was brought, maintained, defended, mediated, and where negotiation for settlement occurred. Accordingly, Florida law would govern this action under Florida's choice of law rules. See *Clifford v. Commerce Ins. Co.*, No. 09-21198, 2009 WL 3387737, at *1 (S.D. Fla. Oct. 16, 2009) ("Florida law controls bad faith insurance issues in cases where the underlying personal injury or wrongful death lawsuit was brought and defended in Florida and where settlement negotiations took place in Florida, regardless of where the insurance contract was executed."); *Gallina v. Commerce & Indus. Ins.*, No. 8:06-cv-1529-T-27EAJ, 2008 WL 4491543, at *6 (M.D. Fla. Sept. 30, 2008) (applying Florida law where insurance company's performance, including settlement

---

[11](...continued)
action arising from airplane crash in South Carolina, because, although complaint alleged negligent decisions were made in Georgia, the last event necessary to make defendants liable for the alleged tort was the airplane crash).

negotiations, occurred in Florida); *Shin Crest PTE, Ltd. v. AIU Ins. Co.*, No. 8:07-cv-1433-T-24MAP, 2008 WL 728388, at *2 (M.D. Fla. Mar. 17, 2008) ("[E]ven though a bad faith claim is an action ex contractu, a bad faith claim relates to the insurance company's performance (or lack thereof) under the contract, and matters concerning to performance are governed by the law of the place of performance.  The place of performance in this case was Florida, because that [is] where the lawsuits against Plaintiffs were maintained and defended by Defendant.  Accordingly, Florida law governs Plaintiffs' bad faith claim." (internal citations omitted)); *Teachers Ins. Co. v. Berry*, 901 F.Supp. 322, 324 (N.D. Fla. 1995) ("In this case, the place of TIC's performance under the insurance policy is Florida.  Florida is the place [where] the wrongful death action against respondents was brought, maintained, defended, and where negotiation for settlement . . . commenced.").

### III. Motion to Stay

Accordingly, the Court must apply Florida law in deciding whether to stay this action pending appeal of the underlying Milton lawsuit.  Under Florida law, a bad faith failure to settle claim cannot be maintained in the absence of an excess judgment.  *Romano v. Am. Cas. Co. of Reading, Pa.*, 834 F.2d 968, 969 (11th Cir. 1987).  In *Romano*, the Eleventh Circuit applying Florida law upheld the dismissal of a bad faith suit pending resolution of the underlying action on appeal.  The court reasoned, "If Mr. Romano's negligence action is reversed on appeal, he will no longer be exposed to any loss in excess of his policy limits.  Since the basis for his bad faith action will have dissipated, his entire claim will be extinguished.  Because the essential element of the appellant's claim may be reversed on appeal, it is logical to require its disposition before it may form the basis for another claim."

13

*Id.* at 969-70.

In the instant case, the Milton lawsuit is currently pending in the Florida Court of Appeals.[12] Allowing Plaintiff to proceed against Defendant while the appeal remains pending "could lead to the insurer being held liable for bad faith failure to settle even though its insured might later be found not liable in the underlying tort action." *Id.* at 970 (quoting *Forston v. St. Paul Fire & Marine Ins. Co.*, 751 F.2d 1157, 1161 (11th Cir. 1985)). Such a result would be contrary to Florida law. *See Clement v. Prudential Prop. & Cas. Ins. Co.*, 790 F.2d 1545, 1548 (11th Cir. 1986) ("The Supreme Court of Florida clearly held in *Cope*[13] . . . that if an insured is no longer exposed to any loss in excess of the limits of his liability insurance policy, he no longer has any claim he might previously have had against his insurance company for bad faith failure to settle within the policy limits."). Accordingly, under Florida law this action should be stayed until the underlying Milton lawsuit is resolved. *See Chalfonte Condominium Apartment Assoc. v. QBE Ins. Corp.*, 734 F.Supp.2d 1302 (S.D. Fla. 2010) (abating bad faith failure to settle action pending resolution of underlying lawsuit on appeal); *Barnes v. Allstate Ins. Co.*, No. 8:10-cv-2434-T-30MAP, 2010 WL 5439754, at *3 (M.D. Fla. Dec. 28, 2010 (noting "the appellate process must be complete before the cause of action for bad faith insurance practice is ripe").

---

[12] Plaintiff filed her Notices of Appeal in the Fourth Judicial Circuit, Duval County, Florida on April 26, 2011 and July 8, 2011 (Doc. #10-1). Oral argument took place on June 13, 2012 (Doc. #63 at 6).

[13] *Fidelity & Cas. Co. of N.Y. v. Cope*, 462 So.2d 459, 460 (Fla. 1985).

### IV. Conclusion

Based on the foregoing, the undersigned respectfully **RECOMMENDS**:

1. Plaintiff's Motion Regarding Choice of Law (Doc. #14) be **DENIED** to the extent that it requests the Court ultimately find that Georgia law applies to this action. Under Georgia choice of law principles, Florida law governs this action.

2. Defendant's Motion to Stay (Doc. #10) be **GRANTED**. This action should be stayed until the underlying Milton lawsuit is resolved.

**DONE AND ENTERED** at Jacksonville, Florida, this 22nd day of August, 2012.

THOMAS E. MORRIS
United States Magistrate Judge

Copies to:
Hon. Marcia Morales Howard
Counsel of record